Thank you, and good morning, Your Honor. Good morning. May it please the Court, George Mills, on behalf of plaintiffs and appellants, Topaz Johnson and Ian Henderson, I'd like to reserve three minutes for rebuttal. All right. Good luck. Thank you, Your Honor. As this appeal comes to you, there is substantial agreement between the parties. Both sides agree that nothing in the Prison Litigation Reform Act categorically bars joinder under Rule 20. The Supreme Court has held that Congress must be explicit to depart from the standard rules of federal procedure. So we don't have anything in the Ninth Circuit on this, though, right? So it's a question of – and I did see that both sides basically agreed to it. But just because you two agree to things, I don't automatically. But in terms of – after I thought about it, in this instance, I'm not going to fight you on it. I can't speak for my panel members. But maybe in terms of timing, if either of my colleagues want to ask about the first issue, we could do that now. And then if not, we can move to the – paying the $350. I have no questions on that first point. All right. So I think your time can be best spent on the other issue. Thank you. Sure, Your Honor. So I think our baseline position is that because the magistrate judge misinterpreted the Prison Litigation Reform Act on that key issue, this Court can at a minimum send the case back. So it would have to go back just to look through the proper lens. Absolutely, Your Honor. So I think for the same reasons that the magistrate judge erred on sort of the top-line issue, this Court should also clarify that the Prison Litigation Reform Act requires just one fee per filing. That's the baseline practice in civil litigation. I don't think anybody here disputes that even non-IFP prisoners can split a filing fee. Section 1915 by its own terms does not apply to them. So if you have 10 non-IFP prisoners, each can split $17.50 and pay a $350 filing fee. Well, so, but the PLRA, if we look to what it was trying to accomplish, if we, it would be, so under 1914 they could just pay one fee, but we have to look at the language regarding 1915, right? Yes, Your Honor. So what the PLRA does is they have to pay it, but they get time to pay it, and it comes out of their account for smokes, et cetera, right? They get to pay it over time. That's correct, yes. It comes in installment payments through the procedure. So if we agreed with you, then a whole bunch of prisoners could come together and just each chip in a little bit and then get into court, and it seems that that might be inconsistent with the language. I think a couple points on that, Your Honor. So first off, Rule 20 is the backstop for that sort of incentive argument. If they're not properly joined together, the court can sever and dismiss, and the people who are properly before the court are responsible for the full filing fee. The second point is just on the underlying purpose of the Prison Litigation Reform Act. It was not that individuals should have to pay sort of more than other standard civil litigants. It's that they should have to pay the same amount as other standard civil litigants. So it was trying to correct a perceived unfairness. Well, was part of the Act to try to prevent frivolous prisoner lawsuits? Absolutely, Your Honor, and there are numerous provisions within the statute that accomplish that. The three strikes provision, for example, the screening provision in 1915e. So the Prison Litigation Reform Act already has sort of a belt and suspenders approach to that. What the sort of fee filing provision was aiming to do was just to make sure that the courts were fairly compensated for the burden of filing. I think maybe the simplest way to think about it is it's a filing fee. It's a fee for the filing. In joint litigation, there's one filing, therefore there should be one fee. So the challenge, I think, for you is, you know, you've got the text that says that the prisoner shall pay the filing fee. So that's the hardest thing that you have to overcome. And then there's arguments, the Dictionary Act, et cetera. Can you just kind of walk through what do you think are the best arguments? I think if we start with the text, it says the prisoner shall have to pay the filing fee, which seems different than in other contexts. So what are the arguments that overcome that, do you think, in your view? Sure, Your Honor. So I guess starting at sort of the highest level, the baseline rule in civil practice is splitting filing fees. So under Jones, the question is, did Congress explicitly depart from that? Okay. So let me – so I've looked at it, so I want to make sure we use your time. Yes. So that makes sense. The only problem is, is when they write something different, when Congress writes something different, you think maybe they are trying to depart from that baseline practice. And as Judge Callahan was saying, it's not crazy to think that they might want to do that here in the context of prisoners. So I understand that argument. I'm just not sure how much weight that one carries with me, at least, because of the fact that, like, they did write it different and we can maybe take from that that they meant it different. So do you have a response to that? And then what are your other arguments? Sure, Your Honor. So to be clear, I think you're absolutely right that Congress intended to depart from the normal rule that IFP litigants need not pay at all. I think that's what 1915b does. But it doesn't depart from joint filing fee splitting. And so to move to the text, it says if a prisoner brings a civil action or appeal, the prisoner shall be required to pay the full amount of a filing fee. If we strictly construe that text and we say if a prisoner brings a civil action or appeal, then this provision wouldn't seem to apply to multi-prisoner litigation at all. A prisoner did not bring this case. Multiple prisoners did. So I don't think that's what Congress intended, and I don't mean to be too cute here, but I think if the statute is fairly read to contemplate multiple-prisoner litigation, it must be read in the first half of the sentence to say if prisoners bring a civil action or appeal, all we're asking is for the second half of the statement, the prisoner, to become prisoners as well, just to carry that plurality to make grammatical sense. We think that's consistent. And Judge Graber has a question. Yeah, I do. In 1915 sub B3, it does say that, I'm paraphrasing, the filing fee cannot exceed the fee permitted by statute for the commencement of a civil action. So if the filing fee for the commencement of a civil action with five plaintiffs who are not prisoners is one filing fee, then this seems expressly to have contemplated that that can't happen, to have it multiplied. Absolutely, Your Honor. I think that's exactly right. And, I mean, I would just note it's the filing fee collected, and it's a passive construction there. It doesn't say, you know, from a prisoner. Yeah, can I ask you a follow-up about that? Sure. I think that's probably your best argument is that the challenge, two challenges with that is it feels a little bit circular or bootstrapping because it's saying you can't pay more of a fee than the fee required by statute. But, I mean, the whole question before us is what is the fee that the two, three or four paragraphs up requires, right? So I'm not sure how much work that does for me. The only way it does the work that I think that you're hoping for in the argument is if you're sort of, if you're thinking of the fee as being the $350,000, right, as if you kind of, and it is interesting that it says to me, it says, no event shall the filing fee collected, which I understand your argument on that, exceed the amount of fees, plural. So what do you think, like, because in theory, like, the filing fee collected could be 10 prisoners times 10 fees permitted. You know, I realize this is sort of angels dancing on it, but some of these arguments feel a little bit like that. I think in the Sixth Circuit, they put a lot of emphasis on a versus the or something, one of the separate opinions did. Sure, Your Honor. Yeah, I think that was the Third Circuit opinion. Third, yeah, I'm sorry. The answer, I think, to that sort of multiple fees language is actually in a footnote in Bruce v. Samuels from the Supreme Court interpreting this same provision. And the Supreme Court explicitly held that Congress was not being perhaps the most assiduous with the use of the singular and the plural in this statute. And then they cite to the Dictionary Act. So what you're saying, 1915b3, would stand for the proposition that you can't exceed the amount permitted in 1914. Correct. And therefore, it would have to be, they'd have to be allowed to split it. That's correct, Your Honor. There's also B1, which says that it also says the prisoner, but it says a filing fee. So that also is ambiguous, I guess. That's correct, Your Honor. And I would note that if ambiguous, I think under Jones v. Bach, tie goes to the runner in a sense. Congress needs to be explicit to depart from the standard practice. Unless they're unequivocal, I think what Jones v. Bach says is you read the PLRA to harmonize with standard Federal procedure, not to depart from it. I'd also note just the sort of other principles of statutory interpretation that help us out here. 1915f2 has identical language to 1915b and actually refers back to it for the costs provision. So 1915f2. Can I ask you a question about that? Because it does seem a lot, and I'm trying to figure out how I can articulate this the best way. It seems it would be really weird to say, okay, there's, the government has, you know, $437.12 worth of costs. And they're going to get a windfall of $437.12 times 10 prisoners, right? So it makes more sense to me why costs pretty much, I mean, that's why I think it has to be true, that in no event shall the costs collected exceed the amount of costs ordered by the court in FC there, or whatever, yeah, FC, whatever it is. That seems like it has to be, otherwise you're creating a windfall for a party, right? The same thing is not necessarily true in the fees. So I think there's a disconnect between, because the fees are what you pay to the court to file a case. The costs are sort of reimbursement for the opposing party's position. So it would create a windfall, wouldn't it, if they did anything other than the costs? I think that's right on the costs. But I think the same principle actually applies for the court. Well, except for 1914 prescribes the filing fee per action. 1915 specifies per litigant approach. So why shouldn't we find, I think, as Judge Van Dyck said, why wasn't that distinction purposeful? I think the statute as a whole is really about proceedings in forma papris. I mean, that's sort of the title of the statute. So I don't know that it's necessarily per litigant. And, again, to the point that Judge Graber made, I think the language of a filing fee is important here. So I don't understand on the ground, I guess, from the standpoint not being a prison lawyer, as it were, what would be the incentive to file under 1915 over 1914 or vice versa? Because 1914, it's one cost. I think we agree on that. But if we found that, you know, why would a prisoner pick one over the other? Sure. Because you can pay under 1915. You can pay a little bit up front and then go forward. Yes, Your Honor, and pay an installment. So it requires an affidavit that you're indigent. And 1914, you couldn't. Correct. You'd have to pay up front. You'd have to pay one fee for action, but you couldn't, you wouldn't. So they'd have to go out in the prison yard and collect the full fee if they wanted to file. Do prisoners ever file under 1914? Absolutely. So the Ellis case, which the Fourth Circuit just decided, was exactly that case. It was, I believe, four prisoners who came together, and they split the filing fee, and then they went forward. So let me make sure I understand. So if our court was to follow, I mean, you agree it's the majority rule that each one has to pay under 514 by a prisoner. If our court was to — maybe you don't agree that that's the majority rule. Well, I think the majority — well, so that would be under 1915. Yeah, 1915. I said — if our court was to follow the Third Circuit and the — whatever the circuit. I know Sixth Circuit is on the other side, but the Seventh and the Third. And the Eleventh, kind of, because the Eleventh, kind of, they end up with a different place, but they do agree there has to be a per-prisoner fee. If we were to follow that, the upshot of that would be if you're a prisoner and you want to do a joint action, you kind of have two choices, right? We can pay everything up front, and then we can split it, because we'd all agree that under 14 they could split it. Or if we want to go on the installment plan, it's going to be per-prisoner, if we went that way, right? So those are the two choices. You — would a prisoner have both the — prisoners, they're trying to do a joint action, would have those choices, or? If you went that way, yes. But I would note that would create a pretty absurd result that under 1914, if they were all able to pay up front, they would pay a total amount. Well, why would that create an absurd result? Because the goal is to — I mean, it seems like the whole reason that Congress must have said prisoners are still going to have to pay, even if they're informer properous, is that they — is a little bit of a deterrence effect for frivolous suits. So you're saying, well, you can come in and get the benefit that 15 gives you of paying on the installment plan, but if you do that as a joint action, we're not going to reduce it down to $5. Got to have skin in the game, so it's not a frivolous lawsuit. Sure, Your Honor. But how is it — I guess my question, maybe this belongs to your opposing counsel, which is if a lawsuit is frivolous, it's no more frivolous if you have three people as plaintiffs than one. But I guess the deterrent effect is different. Sure, Your Honor. There's a lot packed in there, so I want to pull apart a few points. I think the first — Well, you're in overtime already. Yeah. Okay, and we kind of focused on that. Let me find out — now we're into, does the court have any questions? Do either of you have any questions? I don't have any more for now. All right. So I'll give you two minutes. I have a follow-up question on the issue of deterrence, whether — which is the — is the deterrence for a lawsuit or is the deterrence for an individual? Because if — and I guess that's the question we have to answer, but I'd like your thoughts on that. Sure, Your Honor. So I think a couple points. One is this would be creating a scenario where indigent individuals would have to have more skin in the game than non-indigent individuals if you were to adopt the Third Circuit's ruling. There would be in a 20-litigant hypothetical where they're all properly joined under Rule 20, they would have to pay $7,000 for the same lawsuit that is of — But what I was asking before is if they want to pay on the installment plan. But if they want to — if they're willing to pay up front and they go under 14, if they have 20, do my math, but it's $17.50, right? It's all they got to scrape up per person. Sure, Your Honor. I guess I would say you're speaking in terms of incentivizing or disincentivizing frivolous lawsuits. I think another way to think about this is the PLRA is aimed at efficiency, and if you're not following the normal rules of civil practice, you're not incentivizing joint actions. League to Save Lake Tahoe, United Mine Workers to Beat Gibbs, all of these put a presumption in favor of jointer because it's more efficient for the court. So the inverse way of thinking about it is by adopting the split filing fee rule, you're incentivizing people to join properly joined actions. Well, let me — and I know we're over — It's okay. Let me make sure I get your thoughts on this. My thinking on that was if you go with the majority rule, what I'm calling the majority rule, you will still have cases that involve jointer, but they will only be cases where the jointer is actually really kind of important to litigation. Because if we were to go with the minority rule, you can go around the court, hey, I'm filing a lawsuit. It doesn't cost you anything to join my lawsuit. And in theory, you're like, yeah, I'm in. But now since you have to have skin in the game, you've got to think about that. Like you either have to pay a portion of it up front or you've got to pay your 350 over time. So why doesn't — so I do think there is more of a difference in your saying there that could make sense under what Congress did here. Sure, Your Honor. I think the Sixth Circuit's actual practice on how this works maybe clarifies that a bit. If you're trying to just recruit people who don't belong in the lawsuit just to get your overall costs down, you're severed under Rule 20, and then your costs remain the same. And, in fact, you might obtain a strike. So there are real risks to proceeding jointly that would dissuade people from just joining just to help out somebody else. Okay. If I were reading faces, you had kind of a shocked look when I called you on your time, but you're now three and a half minutes over your time. So we're not really taking your time away. And I'll give you two minutes for rebuttal. I appreciate it. Thank you. But you look surprised. Okay. We'll hear from the High Desert. Good morning. Good morning, Your Honor, and may it please the Court. My name is Martha Ehlenbach, and I represent Defendant Silva in this. Can you keep your voice up? Yes, Your Honor. Thank you. Thank you. Okay. So I think you know we're sort of centered on this, so you don't really need to talk about the first issue unless you want to say you don't agree with going with the main circuits on the Rule 20 rule. Are you still where you were? Your Honor, we do agree that Rule 20 doesn't necessarily preclude joinder of prisoner plaintiffs in one action. This Court should affirm, however, in this case, that the district court properly denied joinder because of concerns regarding communication delays among the prisoners. Well, but the district court basically started with, you know, frequently we remand things if the district court got the law wrong in the first place. And I think that if we were to hold that Rule 20 isn't out of the ñ it's not incompatible with 1915, the district court did not look at it through that lens. That's correct, Your Honor. If this court were to remand solely so the district court could do that analysis in such a way that it could consider ñ Well, wouldn't we have to? Wouldn't we have to if the district court got the law wrong? Not necessarily, Your Honor. This court can affirm on any basis supported by the record. And if this court were to find the district court relied on those concerns regarding joint prisoner litigation in this case to deny joinder, then it could affirm on that basis. You can rely on really sort of abstract concerns. And, you know, you're supposed to be rooted in the specific fact pattern of this case. And it's just not super clear to me that ñ I don't think any of that was explicit, at least. So I think you're about to say that if we were to send ñ if we were to say Rule 20 could apply, you didn't root it enough for us on the specific fact pattern, you know, to explain the law, and you can reapply it. In other words, not foreclose the possibility that the district court could exercise its discretion, but send it back. That would be ñ you'd be okay with that? I mean, you'd prefer to us to just ñ you'd just want to win. But you'd be ñ You just never want to win back, and you want this to be over. I would be all right with that, Your Honor, with one slight concern that I'd like to express, is that this court should not adopt a rule that would constrain a district court's discretion to consider those perhaps general circumstances of incarceration. And I'll ñ if I could make two brief points about that. First of all, it's not an ñ Well, Rule 20 ñ excuse me, counsel. Rule 20 doesn't require joinder if it's not appropriate. So the fact that Rule 20 is applicable I don't think would preclude the exercise of discretion on an individual lawsuit. That's correct, Your Honor. My concern is that plaintiff's proposed rule on that issue would constrain a district court's ability to consider those concerns, and prisoners in the ñ judges in the Eastern ñ But the district court didn't consider it because he said it wasn't applicable. All ñ if we say ñ if we go along with the majority of the circuits, all it goes back and says, this is what the law is. Look at the facts in this case and decide whether joinder is appropriate or not. Yes, Your Honor. I would say that the district court did, at excerpts of Record 12 and 13, mention these communication delays. And I should also mention that some of those issues that the district court brought up did actually occur later in this case. There were improper filings where one plaintiff tried to file on behalf of another without their signature or permission. There was a statement made by one of the plaintiffs that he was responsible for all of the filings in this case. And they were transferred. So you want us to do all the fact-finding and just wrap it all up with a nice bow for you right here. But we're probably not going to do that. So maybe you want to spend your time on the costs. Thank you, Your Honor. My larger point is about the district court's discretion. But I'll move on to the fees issue. When enacting the Prison Litigation Reform Act, Congress determined that prisoners preceding IFP should be treated differently than non-prisoners and inmates who are not preceding IFP. So Section 1915b1, as Your Honor stated, states that if a prisoner brings an action or appeal, the prisoner shall be required to pay the full amount of a filing fee, requiring each prisoner to pay that full amount.  So what would you do? You heard our argument already. So just to make sure we don't take you too long over, what about, again, I think their best argument is probably 1915b3. In no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of civil action or the appeal of a civil action or a criminal judgment. So what about that argument that you're capped at the fee, the $350? Yes, Your Honor. Section b3 doesn't speak to whether or not the filing fee collected is per case or per litigant. Whereas b1, and especially when read in the context of the PLRA, which was meant to require indigent inmates to be to think first before they file. Well, doesn't b1 have the words each prisoner? It says a prisoner and then the prisoner. And under the Dictionary Act, if context indicates that that indefinite article a should not be treated in the plural, then it needs to be singular in this case. A person should not be treated as multiple persons. No, and that's not to say that this precludes multiple inmates from joining together, but it does mean that whenever any inmate, a inmate, files an action, they have to be responsible for the full amount of the filing fee. Judge Graber has a question. Would you agree that the statute is not a model of clarity and that it doesn't explicitly answer this question? It is not a model of clarity, and in that case, I think this court should look to the purpose of the PLRA and to the other subsections. But what about the rule that if it is ambiguous, we are to default to the ordinary rules of civil procedure? And what your reading does is to make indigent prisoners pay more than everybody else, pay more than prisoners who have a little bit of money, pay more than ordinary civil litigants. And the ordinary, I mean, so looking at the purpose, that seems unlikely that that's the purpose. But regardless of the question of purpose, isn't the rule that we default to the usual way of proceeding if a statute is unclear? The statute is not so unclear that this court needs to default to a different rule. The full amount of the filing... You said it was unclear, but we should default to the purpose. I said that... Which is different. Parts of the statute are unclear. It's not entirely clear, even in, for example, in Judge Jordan's concurrence in Hagan. Judge Jordan expressed those same concerns and yet still looked at the other sections of the Prison Litigation Reform Act. Subsection G, which is prisoner-specific, which requires that no prisoner who has previously brought three actions or appeals, IFP, who had those actions dismissed as frivolous, malicious, or for failure to state a claim, shall be able to proceed IFP. Right, and so if such a person were included, they would be severed. They would be unable to participate. But I don't understand how that deals with the question of the people who aren't barred, what they pay when they join together. It's relevant, Your Honor, because it shows that the statute as a whole in this context, when we're talking about the filing fee, takes a prisoner-specific approach. Subsections A1 and 2 also require any indigent prisoner who is seeking IFP status to submit that copy of the trust account statement. Again, that is a question of whether they're indigent and whether they fall under this, and anybody who doesn't qualify would be severed. But it seems to me that that doesn't say it all. Once you've gotten rid of the people who aren't eligible and you have, you know, five left, what it is this statute requires. To me, it's unclear. The issue that it speaks to, Your Honor, is it shows that just as any prisoner who is proceeding IFP, who seeks to proceed IFP, has to submit a trust account statement. So what is the purpose of the PLRRA from your perspective? The primary purpose is to deter frivolous lawsuits and encourage indigent inmates to think and consider carefully before filing a particular case. So to that point, with the hypothetical raised about multiple prisoner plaintiffs incurring different fees and costs if they filed the case and paid the full filing fee up front versus attempting to proceed IFP, if you pay the filing fee up front, that would require that those inmates consider carefully that case, pay that $17.50 or whatever amount was appropriate, and then proceed as non-IFP prisoner plaintiffs together in one action. So that difference, when you think about it that way, it does make sense in the context of the statute. And Rule 20 is not necessarily a backstop here. There's no indication in the PLRRA that it was meant to be a backstop. The purpose of the PLRRA and the only reading that gives full effect to those two provisions is that Congress meant to depart from the ordinary proposition that coplainants are assessed a shared fee, and it expressly indicated that intent to make each inmate responsible for the full filing fee. I think you're both citing Jones to suit your purpose. When Congress meant to depart from the usual procedure requirements, it did so expressly. Your friend on the other side says it's not express. You're saying it is express? The full filing fee language is clear, yes. It could be clearer, which is why I agree with the proposition that it's not a model of clarity because it doesn't specifically speak to – it doesn't say – there's no provision specifically applying to multi-plaintiff litigation. I think when you were talking to Judge Graber, then you mentioned going to the purpose. But are you departing from – you're saying they did it expressly. Then are you saying we first look to the other parts of the statute before we look to the purpose? Or what is that? What's your – can we gain clarity from looking at the other parts of the statute? Yes, Your Honor. I think you can, because to the extent that those other sections are also prisoner-specific and that they speak to what any prisoner, whether or not they're bringing a joint litigation, needs to do when they proceed IFP. I don't think the plaintiffs – I don't take the plaintiffs to argue that more than one prisoner bringing an action together would be excused. But just so I understand your position, is it that it could be clearer, but it's clear enough to decide it on the language of the statute? Yes, Your Honor. I just want to – Similar to what Judge Jordan said in his partial concurrence. So, you know, we've talked about some of what I think are the strongest arguments for the position you don't support. One argument that at least superficially felt strong to me, but I'm not sure I'm there now. So, Mr. Mills, I want you to listen to this too when you get back up. But, you know, one of the arguments is you're treating these prisoners worse because you've got, you know, 14. You know, if I bring a lawsuit, if the three – Judge Graber and Judge Kellan and I all bring a lawsuit together and join together, we're only going to pay $350. But the prisoners are going to have to pay per each. But it's true that, like, prisoners, if they just went under 14, they could – they're not being treated worse in the sense that they could always go under 14, right? It's just they get this benefit where they can – I just want to make sure I'm understanding this. They get this benefit where they can pay on time, which is something I don't get, I don't think, if I bring a lawsuit. And they can pay under installments. So, in theory, you could read 15 as saying, yeah, we'll give you this benefit that you can pay on installments, but if you bring a joinder, we're not going to let you chop the case up in the tiny – chop the fee up in the tiny little pieces. Maybe my question wasn't super clear, but I'm not sure how prisoners, after I thought about it, are really getting treated worse because they always have the option to go under the non-IFP provision, 14. If they're not indigent, right? I mean, under 14, the person is not indigent. Is that right? Right, or an indigent person could – let's say they actually qualified as being indigent, but they still could scrape up $350. They can always go under 14 if they want to. And so if there was 10 indigent people and they wanted to bring a joint action, they could go under 14 and split the fee up 10 ways. Would you agree to that, if they pay up front? Indigent inmates? Yeah, indigent inmates. If, yes. They're not saying I'm indigent. Let's just say they are. I wouldn't say necessarily go under 1914 because that's just the statute that prescribes the fee. But, yes, 1915 is specific to indigent individuals. Who are trying to pay over time. Who are trying to seek IFP status. Okay. Which gives them the ability to pay over time. Is that right? Yes. And so my point is, is that if they're willing to pay up front like everybody else does, they're not actually just – they're not hurt, right? Because they can still bring in – they're no differently situated than 10 non-IFP people who want to bring a lawsuit and can split the fee up 10 ways. 10 IFP people can also split the fee up 10 ways. The only way they can't split it up is if they want to take advantage of this special circumstance that 15 gives them to pay over time, right? That's what I'm trying to understand. It's not super clear to me that they're worse off. It's just that we're giving you this benefit that you can pay over time, but we're going to condition that benefit on the ability to – on saying you can't chop it up. Because if you pay over time and you chop it up, then your cost per month becomes a pack of cigarettes. The idea of the PLRA is that it's geared toward indigent inmates, and that indigent inmates in particular, unlike non-indigent inmates who would need to pay that filing fee, don't have that incentive before they bring suit. Well, about the purpose of the PLRA, Senator Bob Dole said the purpose of the PLRA was to prevent prisoners from getting preferential treatment over other litigants. That's what he said. If you want to talk about what the – you're saying the purpose is not to have frivolous lawsuits, but I think what Judge Van Dyke is exploring with you, if you can be nimble about this, is being treated differently doesn't necessarily mean that you're being treated more favorably or less favorably. She said it better than I do, as usual, so. That's true. Let me see if I can say it a more simple way. You have a route, which is if you want to bring a joint lawsuit, you can split the fee up. Everybody has that option to them. Then there's another route you can go if you're indigent and you can show the court you're indigent. But you don't have to go that route. So I don't see how – it's hard to think that somebody's being treated worse when they always have the same route that everybody else has. They just have this other route that they may wish that other route was more favorable than it is. But indigent people have two different options. Non-indigent prisoners that wanted to bring a joint action only have one option. Think before you say something. Listen to what he said. It seems like you're trying to snatch defeat from the jaws of victory here. He gave you a way that – a way to analyze it. And then you keep going, but. Yes, Your Honor. I agree that being treated differently is not necessarily being treated worse. Okay. Any further questions? I'm curious to hear Mr. Mills' answer on this. Okay. All right. Thank you, Your Honor. You're over time. Thank you. And so that will complete this. Thank you. And I gave two minutes to the appellant for – Did you understand my not very well-articulated question, Mr. Mills? I thought it was well-articulated. I think so, Your Honor. That's a good kiss-up to the judge. Yeah, that's a good – he wins. Go for it. Yeah. I think maybe the disjuncture here is it's not a question of willing. It's a question of able. If you're indigent, by the very definition, you're not able to pay. You have nothing. And at prison wages, which are remarkably low. Can I push back on it a little bit? Sure. Usually you would think that means you're not able to pay $350. But if you can get 350 indigent people together and join, and if you go with the minority rule, they're indigent, but they can pay it back. They can pay one – they can pay – so you see what I'm saying? Like, it's not – the fact that they're not able to pay the $350 doesn't – but to my other point, are they really being treated worse? Because they always have the option – how can they be treated worse if they always have the option that everybody else has? They might not be treated any better. Well, 1915 doesn't apply to – it would not apply to us. We could not file under that. So we're talking prisoners under that, right? I mean, in standard practice, non-prisoners can file under 1915a as well and pay nothing. So indigent people who are not incarcerated pay nothing. It's just that indigent people who are incarcerated – and it's not every day a prisoner's rights lawyer quotes Bob Dole, but he said they want the fees – it was designed to correct the perceived unfairness of indigent prisoners not being required to pay the fees that normally accompany the filing of a lawsuit. That's what Bob Dole said when he was introducing the PLRA. So if you say the language is not clear. Yes. Okay. Then you just say because it's not clear, you automatically win, that tie goes to the runner, or what is your approach on that? Do we look to the purpose? Do we look to the other parts of this statute? Or what's your approach on that so that you can continue on your victorious path? Sure, Your Honor. I see I'm into overtime, but may I answer? Yes, go ahead. Sure. I think it's all of the above. Yes, it's not explicit. It could say each or every in the statute, but it doesn't. So under that, under Jones, that works in our favor. The next line down is, okay, it does say a prisoner. How do you get around that? The Dictionary Act provides the exact solution. Now, like, the next line of defense is, well, the Dictionary Act doesn't apply if the context indicates otherwise. But here the context indicates exactly in our favor. It aligns both with the purpose of the PLRA as a whole. What is the purpose of the PLRA from your perspective? Sure. I think it's to deter frivolous lawsuits, but it's not to deter lawsuits. And I think, as you'll see from the allegations here, this was not a frivolous lawsuit. This was a meritorious lawsuit. So I think it's not to deter lawsuits in general. It's just to prevent the courts from being overburdened. And it's also to increase efficiency. And I would say joinder is more efficient than non-joinder. This fee filing provision would incentivize joinder when people are properly joined. That will ultimately reduce the burdens on the court. So let me see if my colleagues want to ask you anything additional since we've gone over. Judge Graber? Thank you. So I think that will conclude argument. Thank you both for your argument in this matter. This matter will stand submitted, and this court is in recess until 9 a.m. tomorrow. Thank you both.
judges: GRABER, CALLAHAN, VANDYKE